**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **CRIMINAL NO.  1:25-cr-224 (RDM)** |
| | : | |
| **ELIAS RODRIGUEZ** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MOTION FOR SCHEDULING ORDER AND TRIAL DATE

The United States, by and through undersigned counsel, moves this Court to set a date for the commencement of trial and proposes the pretrial schedule as set forth below.  At the Court's direction, the parties conferred in attempts to come to agreement regarding scheduling.  While the parties were able to come to limited common ground on some matters, counsel for the Defendant asserted to the Government that they are not currently able to inform the Government what issues they anticipate will require litigation or propose a trial date acceptable to the defense.

For the reasons herein, this Court should set jury selection to begin on September 7, 2027, with trial to immediately follow.  By establishing a pretrial schedule and trial date now, this Court will honor the victims' statutory right to expeditious proceedings, the public's interest in bringing prompt criminal proceedings, and the Court's interest in maximizing judicial resources and efficiency by providing a clear date by which pretrial litigation should be completed.  Further, by adopting the Government's proposed pretrial schedule, the Court will ensure that pretrial matters are resolved in a timely manner and that the case stays on schedule for the September 7, 2027, trial date.

Under the Crime Victims Rights Act (the "CVRA"), victims possess a statutory right to proceedings "free from unreasonable delay."  18 U.S.C. § 3771(a)(7).  The CVRA further

commands that "[t]he court shall ensure" that victims can realize their rights under the statute, § 3771(b)(1), while also directing prosecutors to make "best efforts" to accord victims their enumerated rights.  § 3771(c)(1).  Here, the government has proposed a pretrial schedule that culminates with jury selection beginning on September 7, 2027.  This date is approximately 27.5 months since the defendant committed the acts alleged in this case, and the victims and the public should not be made to wait any longer than necessary to bring this matter to a just resolution.

The government's proposed trial date is reasonable, and establishing this date now is the best way for this Court to ensure against undue delay.  While the Government does not have sufficient information to provide the Court with a comprehensive list of pretrial issues, the parties may litigate matters related to Constitutional challenges to the death penalty, Special Findings, and the Federal Death Penalty Act; expert designations and *Daubert* motions; defenses related to the Defendant's mental health; jury questionnaires; motions *in limine*; and jury instructions, among others.  Setting pretrial deadlines now will also provide the victims, witnesses, community, Court, and counsel for both parties with a clear roadmap of things to be done, while also establishing a firm date for the trial.

The scheduling order proposed by the Government will give all interested persons, including the victims and the affected community, an understanding of when they may anticipate a trial in this case, as well as the litigation they may expect during the interim.  By paving a clear path toward trial, a scheduling order and trial date will ensure that this case continues to proceed apace, and make clear that the victims' right to "proceedings free from unreasonable delay" are not just empty words.  18 U.S.C. § 3771(a)(7).  Setting timeframes and deadlines for important case events, such as motions, hearings, and trial, is a simple, reasonable, and essential step

toward a timely resolution of this important case.  Absent such deadlines, the case risks meandering toward trial without regard to the expectations of victims and communities impacted by this litigation.

By capital case standards, the Government does not anticipate a lengthy guilt phase and estimates that it will take approximately two weeks. The Government does not offer an estimate for the punishment phase because its duration will depend to a substantial degree on the evidence the Defendant chooses to present and, therefore, cannot be reasonably predicted by the Government at this time.

Moreover, establishing a comprehensive scheduling order now will allow the Court and parties to allot appropriate time and resources to this case.  It will permit the Court to reserve time for consideration of motions, to hold potentially lengthy hearings, and to prepare for jury selection and trial.  It will enable both parties to litigate disputes in a manageable fashion, prioritizing and focusing on issues as they arise in the schedule.  Further, the scheduling order will diminish the risk of unexpected continuance or delays by providing all parties a clear understanding of upcoming deadlines and events.  This schedule will also best allow for the Court, court staff, attorneys, and witnesses to manage long-term calendars, giving everyone a clear picture of what is expected and when.

The Defendant is not prejudiced by the Government's scheduling proposal.  Here, the Government has proposed a trial date that would provide the Defendant with ample time to prepare a defense and the opportunity to raise challenges to, among other things, the substantive charges in the indictment, the death penalty, the specific aggravating factors alleged in this case, and the Government's evidence.

What is more, the Government's proposed trial date is 27.5 months from the date of the offense, 25 months from the date of indictment and almost 16 months from the filing of the Notice of Intent to Seek the Death Penalty on May 15, 2026.  Defense counsel has been representing the Defendant since his initial appearance on May 22, 2025, and learned counsel was appointed approximately one month later, on June 20, 2025 (i.e., 26.5 months before the proposed trial date).  During the process to determine if the Government would seek the death penalty, defense counsel made multiple presentations to the Government regarding their mitigation investigation.  As reflected in the proposed schedule, there is ample time to accomplish necessary tasks and, excluding two recent federal capital cases that were substantially delayed by the Covid-19 pandemic,[1] the Government's proposed schedule in this case is generally in line with other federal capital cases.

For example, in *United States v. Dylan Roof*, Case No. 15-cr-472 (D.S.C.), a capital prosecution stemming from the defendant's murder of nine Black parishioners engaged in religious activities at the Mother Emmanuel Church in Charleston, South Carolina, the government filed the Notice of Intent to Seek the Death Penalty on May 24, 2016, and the court

---

[1] The first is the prosecution of Sayfullo Saipov in the Southern District of New York for the October 31, 2017, terrorist-motivated attack with a box truck that resulted in the killings of eight persons and serious injuries to many others.  *United States v. Saipov*, Case No. 17-cr-722 (S.D.N.Y.).  After the government filed its notice of intent to seek the death penalty, the *Saipov* case was set for trial on April 13, 2020 (approximately 2.5 years from the date of the crime), and all indications were that trial would begin on that date before the pandemic-related shutdowns caused significant continuances.  The *Saipov* trial ultimately began on October 11, 2022.  The second is the prosecution of Robert Bowers in the Western District of Pennsylvania for the October 27, 2018, hate-motivated killings of 11 members of the Jewish faith at a Pittsburgh synagogue.  *United States v. Bowers*, Case No. 18-cr-292 (W.D. Pa.)  In *Bowers*, the government moved on September 24 2019, for a comprehensive scheduling order and trial date.  Dkt. 91.  On November 7, 2019, the district court granted the government's request to set pretrial deadlines, but denied the motion to set a trial date.  Dkt. 110.  Trial ultimately began on April 24, 2023.  Given significant delays caused by the pandemic in both these cases, the government submits that they are not good comparators for how the Court should proceed in the instant case.

entered comprehensive scheduling orders less than three weeks later – on June 7 and June 9, 2016.  *See Roof*, *supra*, Dkt. 179 and 180 (D.S.C.).  Roof committed his crimes on June 17, 2015.  Jury selection in his case began on November 28, 2016, approximately 17 months from the date of his crime and six months from the government providing notice that it would seek the death penalty.

Similarly, in *United States v. Dzokhar Tsarnaev*, Case No. 13-cr-10200 (D. Mass.), a capital prosecution stemming from the April 15, 2013, bombing at the Boston Marathon and subsequent murder of a police officer, the government filed its Notice of Intent to Seek the Death Penalty on January 30, 2014, and the court entered a comprehensive scheduling order two weeks later – on February 12, 2014.  *See Tsarnaev*, *supra*, Dkt. 172.  Jury selection in *Tsarnaev* began on January 5, 2015, which was approximately 21 months from the date of the crime and 12 months from the filing of the Notice of Intent to Seek the Death Penalty.

Finally, in *United States v. Council*, Case No. 4:17-cr-866 (D.S.C.), the prosecution of a double-murder committed during a bank robbery, the defendant committed his crimes on August 21, 2017.  The government filed a Notice of Intent to Seek the Death Penalty on March 21, 2018, and the court issued a comprehensive scheduling order on May 2, 2018.  Jury selection began on September 9, 2019, just over two years from the date of the crime, and approximately 16 months from the date the government filed its death penalty notice.

At bottom, establishing a comprehensive scheduling order at this juncture serves the interests of all involved.  It ensures that the victims' rights and the public's interests in bringing prompt criminal proceedings are preserved.  It also provides a clear roadmap for all involved as to what must be accomplished and when.  The schedule protects the Defendant's right to a speedy trial and allows him to fairly litigate pretrial issues.  Similar schedules have been adopted

by federal courts in other federal capital prosecutions, including cases like the instant one involving multiple murders. These schedules have allowed for full litigation of issues and ensured the efficient administration of justice.

For these reasons, the Government respectfully requests that this Court adopt the proposed schedule detailed below, including the commencement of trial on September 7, 2027.

<u>PROPOSED SCHEDULE</u>

**September 14, 2026**
1. Constitutional challenges to the Federal Death Penalty Act, federal punishment statutes, and Special Findings in the indictment (including categorical challenges, age-based claims, and mental-health-related preclusion arguments).
2. Motions to dismiss or strike Special Findings and/or any Notice of Intent to Seek the Death Penalty.
3. Challenges to death qualification (if applicable).
4. Defense reciprocal discovery under Rule 16(b)(1).

**October 20, 2026**
Government responses.

**November 10, 2026**
Defense replies.

**December 7, 2026**
Hearings on Special Findings/capital-related motions, if necessary.

**December 14, 2026**
Parties confer on jury selection procedures.

**December 28, 2026**
Defense non-capital pretrial motions/challenges; general motions; disputed jury selection procedures.

**January 28, 2027**
Government responses to defense non-capital pretrial motions/challenges; general motions.

**February 12, 2027**
Defense replies.

**March 3–5, 2027**

Hearings on pretrial motions and jury selection procedures.

**April 12, 2027**
1. Defense Rule 12.2(b)(1) & (2) notices:
   • Identification of experts
   • Professional qualifications
   • Topic summaries sufficient for government expert selection
2. Deadline for any *Atkins* claim.
3. Competency challenges due (or *ex parte*, sealed declaration explaining why none is filed).
4. Government/defense guilt-phase and penalty-phase non-mental-health expert summaries under Rule 16(a)(1)(G) and 16(b)(1)(C).

**April 26, 2027**
1. Disclosure of full expert reports supporting the April 12 summaries (guilt and penalty phases).
2. Defense and government *Daubert* / reliability / admissibility challenges to all expert reports (guilt and penalty phases).

**May 12, 2027**

Reply briefs regarding all expert challenges (guilt and penalty phases; mental-health issues).

**May 24–26, 2027**

Hearings on expert challenges, Rule 12.2 mental-health disputes, competency, and *Atkins*.

**June 7–11, 2027**

Jury questionnaires completed.[2]

**June 23, 2027**
1. Joint and separate (disputed) proposed jury instructions and verdict forms (guilt and penalty phases).
2. Motions *in limine* for both phases.

---

[2] Subject to negotiations of the parties and litigation related to jury selection procedures, it is generally expected that the Court will summon large groups to the United States Courthouse or another agreed-upon location to complete the jury questionnaires.  Groups will be summoned in the morning and afternoon each day. The jury administrator will make completed questionnaires available to the parties on a rolling basis as soon as possible after each group completes the questionnaires.

3. Government witness and exhibit lists (guilt and penalty phases).

**July 7, 2027**
1. Responses to disputed jury-instruction proposals.
2. Responses to motions *in limine*.
3. Defense guilt-phase witness and exhibit list.

**July 14, 2027**
Defense penalty-phase witness list and proposed mitigating factors.

**July 21, 2027**
Replies on instructions and motions.

**July 28, 2027**
Parties submit agreed-upon motions to strike jurors based on questionnaire responses and disputed juror-strike motions.

**August 7–13, 2027**
Hearings on:
1. Jury instructions & verdict forms
2. Motions *in limine*
3. Witness/exhibit list disputes
4. Juror-strike issues based on questionnaire responses

**August 17, 2027**
Final witness lists (both phases) updated with availability confirmations.

**August 24, 2027**
Final exhibit lists (both phases) with pre-marked exhibits.

**August 30, 2027**
Final pretrial conference.

**September 7, 2027**
Voir dire begins with trial to immediately follow.

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ Christopher Tortorice*
Christopher Tortorice (TX Bar No. 24048912)
Charles R. Jones (DC Bar No. 1035541)
Assistant United States Attorneys
United States Attorney's Office
National Security Section
601 D Street NW
Washington, DC 20530
christopher.tortorice@usdoj.gov
charles.jones3@usdoj.gov